## Julius Tuttle v. The State.

1. Petit Jurors. — Sect. 26 of the jury-law of 1876 makes it cause for challenge that a petit juror had "served for one week in the District Court within six months preceding, or in the County Court within three months preceding." *Held*, that the word *preceding* has reference to a prior term of court, and that a previous week's jury-service during the pending term is not cause for challenge.

2. Same — Challenge of the Array. — The statute authorizes the defendant to challenge the array only because the officer summoning the jury has acted corruptly, and has wilfully summoned persons upon the jury known to be prejudiced against the defendant, and with a view to secure his conviction.

3. Same. — See the opinion for causes set out as special challenge to individual jurors, which cannot be considered on appeal unless it appears by bill of exceptions that the defendant had exhausted his peremptory challenges.

4. Continuance — Practice in this Court. — This court will not revise the refusal of a continuance unless the transcript brings up a bill of exceptions, duly taken to the ruling at the time of the trial in the court below.

5. New Trial — Newly Discovered Evidence. — In this case the motion for new trial is sworn to by defendant's counsel, and does not negative the fact that the defendant himself knew of the existence of the supposed newly discovered evidence, or that he could not have discovered it before the trial by the use of ordinary diligence. *Held*, that the new trial was properly refused.

6. Same — Misconduct of the Jury. — In order to invalidate the verdict because of the use of spirituous liquors by the jury, it must appear that

during the trial, or after the jury had retired, the juror or jurors may have become so intoxicated as to render it probable that his or their verdict was influenced thereby.   See the opinion for suggestion as to proper practice of bailiffs in charge of jury.

7. SAME — PRACTICE. — That the defendant was not present when the jury was. sworn, is not an objection which can be raised for the first time on a motion, for new trial.   In order to authorize a revision by this court, it must. appear by proper bill of exception that the attention of the court below. was called to the objection at the time, and that the court persisted in, swearing the jury in the defendant's absence.

APPEAL from the District Court of Grayson.   Tried below before the Hon. J. BLEDSOE.

The conviction in this case was for murder in the first. degree; for which the statute imposes the death penalty. The murder was committed in Grayson County, Texas, on. January 15, 1879, upon the body of J. A. Brunner.

R. Cook, for the prosecution, stated that he was in the. saloon of the deceased, in the city of Denison, Texas, on the night of January 15, 1879.   The defendant and the deceased came into the saloon together, talking German, —. which witness does not understand, — in a tone that indi-. cated a quarrel.   The deceased passed on and hung up his. coat, when the deceased and the defendant commenced talking in English.   The former told the latter to leave. his house.   Defendant then asked the deceased what he. had done to him, and received the reply that he had done. nothing.   The defendant then said, "All right, I will leave your house, but I will get even with you yet;" and left the house.   In about twenty minutes the defendant. returned to the saloon.   On hearing a scuffle between the defendant and the deceased, witness put down a newspaper. he was reading, and ran to them as the deceased fell, and called for help.   Witness separated the parties.   The two. advanced towards each other, and the deceased took the de-. fendant by the shoulder, and seemed to be trying to push him down and back, and out of the front door.   The deceased, then called for help, and had his head tucked down.   The.

defendant seemed to strike up. The witness was behind him, and saw the motion of his arm, but saw no knife. The defendant then left, and ran down the street towards the depot. The deceased sat down, and the witness examined him, and found a wound in his abdomen, which he washed. Deceased then told witness to get the first doctor he could find, and witness brought Dr. White.

T. Smith testified that, at the time of the cutting, the defendant boarded with him, in the city of Denison, Texas. He (the defendant) had a pair of saddle-bags in his room, in which he kept a butcher-knife and a whetstone. On the night of January 15, 1879, the night of the cutting, the defendant returned to witness's house, between ten and eleven o'clock, and went to his saddle-bags and took out his knife and whetted it. He said he wanted to cut somebody's guts out. He asked witness for matches, which witness refused to give him. He then left the house, and witness locked the door. About twelve o'clock he came back and knocked at the door, and to witness's call, "Who is there?" answered, "It's all right; it's me." Witness refused to admit him. About daylight he returned again, without a hat, and with his head tied up in a handkerchief. He said that he had cut a big, fat, cross-eyed man. He then asked witness to go and buy him a hat, which witness consented to do. Witness then went on the street and called policeman Wright. When they came back, the defendant was found sitting on a bed in the back room of a bakery. Witness heard him say, when he got his knife out of the saddle-bags, that he was going to cut somebody's guts out before he left.

William Miller, a butcher, testified that, on the night of the killing, the defendant brought him a butcher-knife and asked him to whet it on a steel, which witness did. Defendant then said, "If you hear of a man to-morrow with his guts cut out, say it was me who did it." It was a black-handled butcher-knife.

The city marshal testified that he arrested the defendant on the train as it was pulling out, going north, about one o'clock on the night of the murder, but presently released him, upon the statement of Nelms and Hall that he was "not the man." Found no knife on his person.

Wright, a policeman, testified that he arrested the defendant, as stated by witness Smith. Found his hat in deceased's front room, and defendant put it on, saying nothing. Found no knife on his person.

Mrs. Blodgett testified that she had known the defendant since 1872. He had boarded at her house much of the time. Had never supposed him insane. He always appeared sensible.

Three different physicians testified that the death of the deceased resulted from a knife-wound in the abdomen, near the navel.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, J. The appeal in this case is from a judgment of conviction of murder of the first degree, with the death penalty.

The question raised in the defendant's first bill of exceptions was passed upon by this court in *Garcia* v. *The State*, 5 Texas Ct. App. 337, and it was held that the word "*preceding*" in the twenty-sixth section of the jury-law of 1876, which makes it a cause for challenge that a petit juror has "served for one week in the District Court within six months preceding, or in the County Court within three months preceding," has reference to a prior term of court, and that a previous week's jury-service during the pending term is not cause for challenge. Independently of this disposition of the question, the statement made by the court, "that the juror was afterwards, before the jury was

complete, excused on account of sickness, and did not sit upon the case," would have been a sufficient answer to the exception.

The ground of the second bill of exceptions was the refusal of the court to sustain the challenge to the talesman S. C. Moore. This juror was challenged by defendant because of gross prejudice towards defendant by the sheriff, the officer who summoned him. Reasons for overruling the challenge were made part of the bill of exceptions before it was signed by the court, and are as follows : " 1. Because there was no evidence showing that the sheriff acted with partiality or prejudice in summoning the juror. 2. The defendant had seven peremptory challenges when the juror was empanelled. 3. The answers of the juror showed that he was qualified to sit in the case."

Our statute provides that " the defendant may challenge the array for the following cause only: that the officer summoning the jury has acted corruptly, and has wilfully summoned persons upon the jury known to be prejudiced against the defendant, and with a view to cause him to be convicted." Pasc. Dig., art. 3034. The objection urged to the juror in this case, it will be noted, does not come up to the rule, if this statute is applicable in challenge to a particular juror. There is no allegation that the juror was prejudiced against defendant, nor that the sheriff had summoned him with a view of having the defendant convicted. " Nor can such facts be considered on appeal as cause of special challenge to the individual jurors, unless it appears by bill of exceptions that the defendant had exhausted his peremptory challenges." *Bowman* v. *The State*, 41 Texas, 417. If the sheriff had acted corruptly, and the juror was prejudiced against the defendant, defendant had seven peremptory challenges which he never availed himself of, and either one of which could and should have been used to get rid of the juror, before he can be heard to complain. Had he brought himself within the statutory

rule by his objection, and then have shown that his peremptory challenges were exhausted, and that, consequently, he was powerless to relieve himself, the case would have been different. As it is, the court did not err in the ruling.

No bill of exceptions was saved to the action of the court in overruling defendant's application for a continuance, and this court will not notice any complaints with regard to it. *Allen* v. *The State*, 4 Texas Ct. App. 581, and authorities cited.

With regard to the motion for a new trial; we cannot see that the court erred in overruling it, so far as it was based upon the ground of newly discovered evidence. In the first place, the affidavit, or motion, is sworn to by the counsel of defendant, and does not negative the fact that the defendant himself knew of the existence of the supposed newly discovered evidence, or show that he could not have discovered it before the trial by the use of ordinary diligence. *Gross* v. *The State*, 4 Texas Ct. App. 249 ; *Harmon* v. *The State*, 3 Texas Ct. App. 51.

Another ground of the motion for a new trial was, that spirituous liquors had been furnished to, and were drunk by, the jury. Counter-affidavits were made by the jurors and the officer having them in charge, showing that the whiskey was drunk by them before any of the testimony of the case had been introduced before them, and that none of them were intoxicated by the whiskey which they drank, they not having been furnished with exceeding one pint. To make this objection sufficient to invalidate a verdict, under our statute, it must be shown that during the trial, or after retiring, the juror or jurors may have become so intoxicated as to render it probable that his or their verdict was influenced thereby. Pasc. Dig., art. 3137, subdiv. 7 ; *March* v. *The State*, 44 Texas, 65 ; *Jack* v. *The State*, 26 Texas, 1 ; *Webb* v. *The State*, 5 Texas Ct. App. 596. The better practice is that the bailiff, or officer having charge of the jury, should, in all criminal cases, be instructed not to permit them, after

they are empanelled, to have intoxicating liquors whilst under his custody; and a bailiff or officer permitting it should be severely punished by the court.

Again : one of the additional grounds for a new trial was, that the defendant was not present in court when the jury was sworn. To have authorized this court to notice this ground of complaint, the attention of the court should have been called to the fact at the time ; and then, if the court had proceeded in swearing the jury, a bill of exceptions should have been saved, stating the facts. As it is, such errors cannot be set out and taken advantage of, for the first time, on motion for a new trial.

The court did not err in refusing defendant's application for a rehearing upon his motion for a new trial.

No objection is urged to the charge of the court; nor, indeed, could well be, for it certainly presented the law as fully and fairly for the defendant as the facts of the case warranted.

Taking the case as a whole, we are of opinion that defendant has been justly and legally convicted of a wilful, unprovoked, and premeditated murder, in which there are no pretences of extenuation. There is no error in the judgment, and it is, therefore, affirmed.

*Affirmed.*